UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BLANCHE SHELTON, *individually and on behalf of all others similarly situated*, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) Case No. 1:24-cv-393 ) ) |
| STEAM LOGISTICS, LLC, | ) Judge Curtis L. Collier ) Magistrate Judge Michael J. Dumitru ) |
| *Defendant*. | ) ) |

## **M E M O R A N D U M**

Before the Court is the joint motion of Plaintiff, Blanche Shelton, and Defendant, Steam Logistics, LLC ("Steam Logistics"), filed on May 1, 2025, for "Approval of Joint Stipulation for Court-Authorized Notice to Potential Plaintiffs" ("Joint Motion") under Section 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. (Doc. 34.)[1] Because Plaintiff has shown a strong likelihood that the proposed FLSA collective of other Steam Logistics employees ("FLSA Collective") are similarly situated to Plaintiff, the parties' Joint Motion will be **GRANTED**.

I.   **BACKGROUND**

Steam Logistics sells and provides freight brokerage and logistics services to help its customers transport commodities across multiple states. (Doc. 1 ¶¶ 13, 15.) Plaintiff Shelton worked for Steam Logistics as a sales coordinator in Chattanooga, Tennessee, from approximately March 2022 to July 2023. (*Id*. ¶ 8.) Plaintiff alleges Defendant required her and other sales

---

[1] This motion is the second motion filed jointly by the parties for approval of Court facilitated notice to a proposed FLSA collective of other employees. Because the parties did not offer any facts supporting a conclusion that other employees are similarly situated to Plaintiff, the Court denied the first motion without prejudice.

coordinators "to work long hours to handle all shipment-related tasks, including those occurring late in the evening and early in the morning, and to hit certain sales and prospecting targets." (*Id*. ¶ 27.) She alleges Defendant violated the FLSA by allowing her and other sales coordinators to work more than forty hours per week without overtime pay. (*Id*. ¶ 24.) Plaintiff therefore brings this collective action individually and on behalf of all others similarly situated to recover unpaid overtime pay from Defendant. (*Id.* ¶ 1.)

## II. STANDARD OF REVIEW

The FLSA requires employers to pay covered employees time-and-a-half for labor exceeding forty hours per week. 29 U.S.C. § 207(a). Under Section 216(b) of the FLSA, covered employees can sue for alleged violations of this statute on "behalf of . . . themselves and other employees similarly situated." These "collective actions" follow a certain progression. *See Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1009, 1009–12 (6th Cir. 2003).

"In such lawsuits, a lead plaintiff may request that the trial court approve notice to some class of employees that she hopes to represent." *Taylor v. Pilot Corp*., 697 F. App'x 854, 856 (6th Cir. 2017). With court approval of the form and content of the notice, the named plaintiff or plaintiffs send the notice to other similarly situated employees explaining the nature of the suit and how each employee can opt-in the action. *See generally Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Thus—assuming they are 'similarly situated'—"other employees become parties to an FLSA suit only if they affirmatively choose to do so." *Clark*, 68 F.4th at 1007. After an employee receives notice of the action and "*only after they opt in* [will] the district court determine[]—not conditionally, but conclusively— that each of them is in fact

'similarly situated' to the original plaintiffs" and each opt-in employee then becomes a party to the FLSA suit —"as opposed to mere recipients of notice. *Id.* at 1009 (emphasis added); *see also Duncan v. Magna Seating of Am., Inc.,* No. 2:22-CV-12700, 2024 WL 2106179, at *3 (E.D. Mich. May 10, 2024); *Berner v. PharMerica Logistics Servs., LLC*, 703 F. Supp. 3d 802, 809 (W.D. KY 2023).

Of course, as previously indicated, before other employees can opt-in to the lawsuit, the named plaintiff must send a court-authorized notice of the lawsuit and of the opportunity to opt-in to other similarly situated employees. The purpose of the similarly-situated requirement is the efficient resolution of the many individual claims in the collective action:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

*Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

The current posture of the instant case is focused on whether Plaintiff has made the showing necessary for this Court to facilitate notice to other employees. Until recently, district courts required named plaintiffs to make only a "modest factual showing" that the employees were "similarly situated" for the Court to approve notice. *See Comer v. Walmart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). However, in *Clark v. A&L Homecare & Training Ctr., LLC,* the Court of Appeals for the Sixth Circuit raised the bar for a named plaintiff to show that other employees are similarly situated. 68 F.4th at 1010–11. Absent the required showing, the district court cannot approve the notice. *Id* at 1011. The named plaintiff or plaintiffs bear the burden to meet the required similarly-situated showing. *Id.* at 1012.

3

To allow the court to facilitate notice, "[t]he plaintiff must show only that his position is similar, not identical to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (internal citation omitted); *see also Butlar v. Village Caregiving, Inc.,* No. 2:22-cv-4359, 2024 WL 5691431, *2 (S.D. Ohio July 10, 2024). The named plaintiff and the putative FLSA collective are similarly situated if the plaintiff can show that he and the putative collective "suffered from 'a single, FLSA-violating policy' or that their 'claims [are] unified by common theories of [the employer's] statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Geeo v. Bonded Filter Co.*, No. 3:22-cv-00359, 2023 WL 8115526 (M.D. Tenn Nov. 22, 2023) (quoting *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017)).

The *Clark* Court focused on three factors in the similarly-situated determination: (1) whether the other employees "performed the same tasks," (2) whether the other employees were "subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were," and (3) "[w]hether other employees are subject to individualized defenses." *Clark*, 68 F.4th at 1010.

As was the scenario in the case before it, the *Clark* Court observed that often the parties disagree as to whether the named plaintiff is similarly situated to the employees of the proposed collective and have conflicting evidence and information bearing on them. *Id.* Accordingly, a district court cannot "determine—in absentia—whether other employees are 'actually' similarly situated to the original plaintiffs." *Id.* In other words, the district court cannot simply take the plaintiff's representations and evidence of similarly-situated employees at face value; rather, the court should consider both the defendant's and the plaintiff's evidence, *id.* at 1012, and make a "fact-bound determination," *id.* at 1010. "To that end, a district court may promptly initiate

4

discovery relevant to the motion, including if necessary by court order." *Id.* at 1011 (internal citation omitted). [2]

The *Clark* Court also warned of the perils of "solicitation" if a court-approved notice is sent to employees who are not similarly situated to the original plaintiff:

> The Supreme Court made clear in *Hoffmann-La Roche* that the court's facilitation of notice must not in form or function resemble the solicitation of claims. And notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own.

*Id.* (internal citation and quotations omitted). Rather, the *Clark* Court found "[a] district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction" in that "the movant [must] demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision." *Id.* at 1010–11. To this end, the *Clark* Court established a greater evidentiary standard for the similarly-situated requirement than the previously accepted "modest" or "lenient" showing:

> for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a *'strong likelihood'* that those employees are similarly situated to the plaintiffs themselves. *That standard requires a showing greater than*

---

[2] The Court also observes the *Clark* Court's first concern, expressed at the outset of its opinion, was that while neither the FLSA statute nor the Supreme Court have provided clear guidance as to

> the showing of similarity that the plaintiffs must make for the district court to send notice of an FLSA suit to other employees as 'potential plaintiffs.' . . . *the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold.*

*Clark*, 68 F.4th at 1007 (emphasis added). There is no concern here of forcing Steam Logistics into a settlement due to an expanded collective. Steam Logistics jointly proposed with Plaintiff the FLSA Collective and moves the Court to approve the jointly submitted Notice, Opt-in Form, and the distribution and opt-in plan. The parties also notified the Court in their Joint Memorandum that they will conduct a "global mediation" within ninety days after the end of the Opt-in Period. (Doc. 35, Jt. Mem. at 4.)

5

> *the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance.*

*Id.* at 1011 (emphasis added); *see also id.* at 1010 ("[N]either do we think a district court should facilitate notice upon merely a 'modest showing' or under a 'lenient standard' of similarity.")

The fact intensive inquiry and the strong-likelihood burden of proof serve to assure that "collective litigation w[ill] yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Id.* at 1012 (internal citation omitted). Armed with the correct burden of proof, the Court turns to the question at hand: has Plaintiff Shelton shown by a strong likelihood that the members of the FLSA Collective are similarly situated to her?

### III. DISCUSSION

#### A. The Similarly-Situated Analysis

As previously indicated, Plaintiff brings this action under the FLSA on her behalf and those employees similarly situated to recover overtime pay from Steam Logistics. According to Plaintiff, Steam Logistics required her and other sales coordinators to work long hours but did not pay her or the other sales coordinators overtime for work performed in excess of forty hours a week. (Doc. 1, Compl. ¶¶ 24, 27.)

Unlike the parties in *Clark v. A&L Homecare & Training Ctr., LLC*, the parties in the instant case agree the named plaintiff and members of the FLSA Collective are similarly situated. In support of their Joint Motion, Plaintiff Shelton and Defendant Steam Logistics have made certain stipulations and joint representations in their memorandum in support of their Joint Motion ("Joint Memorandum") (Doc. 35). The parties have also filed as a collective exhibit to their Joint Memorandum eight Steam Logistics job postings for the employee positions at issue. (Doc. 35-2, Ex. B). The job postings are for the following three positions located in the various geographical

6

areas where Steam Logistics operates: (1) Sales Coordinators–Domestic, (2) Sales Coordinators–Domestic Less-than-Truckload ("LTL"), and (3) Sales Coordinators–Drayage (collectively, "Sales Coordinators"). (Doc. 35 at 2, Stipulation 3 n. 1.) The parties make the following relevant stipulations:

> 3. The parties seek to send Court-Authorized notice to the following proposed FLSA collective: **All persons who work or worked for Steam Logistics, LLC, as Sales Coordinators, or in other job titles performing similar duties, and [are or were] classified as exempt from overtime at any time since May 1, 2022 [sic] through the present.**
>
> 4. The parties stipulate that Plaintiff Shelton and the other Sales Coordinators who comprise the proposed collective had a compensation structure consisting of a base salary plus commission. The parties further stipulate that Steam [Logistics] classified all members of the proposed collective as exempt under the FLSA based on the same exemption—the administrative exemption.

(*Id.* at 2–3.) In addition to their stipulations, Plaintiff Shelton and Defendant Steam Logistics made the following representations in their Joint Memorandum:

- "Sales Coordinators in the Drayage, Domestic, and Domestic (LTL) divisions all have the same primary job duties and those duties did not change across different job locations. Job postings for these three roles are attached as Exhibit B." (*Id.* at 5.)

- "The Sales Coordinator–Domestic and Sales Coordinator–Domestic (LTL) job postings are identical, despite differing locations. (*See* Ex. B.)" (*Id.*)

- "The Sales Coordinator–Drayage job postings contain similar primary duties as [Sales Coordinator]–Domestic and [Sales Coordinator]–Domestic (LTL) and the job posting for [Sales Coordinator]–Drayage does not differ by location. [Ex. B]." (*Id.* at 5–6.)

- "[T]he Sales Coordinator–Drayage job postings point to the same key job duties indicated in the [Sales Coordinator]–Domestic and [Sales Coordinator–Domestic] LTL job postings. Sales Coordinators, regardless of division, are responsible for managing the entire cycle of a sale: cold-calling potential clients, booking shipments, and seeing shipments to completion for their customers. [Ex. B]." (*Id.* at 5 n. 2).

- "[T]he Parties stipulated that everyone in the proposed FLSA collective was classified as exempt from overtime under the administrative exemption and paid on

7

a salary basis plus commissions. The defense raised for this alleged misclassification is the same for the entire proposed FLSA collective—the administrative exemption." (*Id.* at 6).

- "[B]ased on stipulation and job postings, all of the proposed FLSA collective members engaged in similar job duties and [were] paid in the same manner. (*Id.*)

According to all the Sales Coordinator job postings, Defendant Steam Logistics assists companies in addressing "how to align the supply chain so goods move efficiently, quickly, and economically." (Doc. 35-2, Ex. B at 2–9.) The Sales Coordinator–Domestic team "focuses on the movement of commodities from one city to another," moving goods "from their origin point to their final destination." (*Id.*, Ex. B at 4–8.) "Less-Than-Truckload shipping is used for the transportation of smaller sized freight shipments when it doesn't require the use of an entire trailer." (*Id.,* Ex. B at 9.) The "Drayage sales team specializes in facilitating the inland movement of shipping containers to and from ports or rail ramps across the United States and Canada." (*Id.,* Ex. B at 2–3.)

Both the Sales Coordinator–Domestic and the Sales Coordinator–Domestic (LTL) positions "are responsible for [their] accounts from start to finish." (*Id.*, Ex. B at 4–9.) The Sales Coordinator–Drayage also "manage[s] the entire sales cycle of a load." (*Id.*, Ex. B at 2–3).

Specifically, the Sales Coordinator–Domestic and the Sales Coordinator–Domestic (LTL) have the following responsibilities: "[c]reate lead lists" using online platforms, "[p]rospect potential customers through cold calling and email outreach," "[f]acilitate the onboarding of new customers and carriers," "[b]ook freight with a carrier," "[s]chedule pick-up and delivery appointments," and "[c]ollaborate with all Steam departments to execute our Perfect Shipment mentality." (*Id.*, Ex. B at 4–9.) Both positions also require "one who is strong in . . . pricing out domestic lanes." (*Id.*)

A Sales Coordinator–Drayage has the following specific responsibilities: "generate sales lead lists" using online platforms, "[p]rospect potential customers through cold-calling and email outreach," "on boarding customer(s)," "schedule container pick-up and delivery appointments," "negotiat[e] rates," and "manage the financials of [his] book of business." (*Id.* at 2–3.)

Turning to the "task" factor in the similarly-situated determination, the Court finds the Sales Coordinator–Domestic, the Sales Coordinator–Domestic (LTL), and the Sales Coordinator–Drayage perform essentially the same tasks. Each of these positions arranges commercial trucking transportation of customers' goods from one point to another. Each position requires prospecting and onboarding new customers, booking transportation on carriers for the customer's goods, scheduling pick-up and drop-off by the carriers, developing pricing lanes for the transportation of goods, and collaborating with other Steam Logistics departments. In short, each position requires the Sales Coordinator to manage the shipment of goods from beginning of the transport to the end of the transport while also cultivating new business for Steam Logistics.

The Court also finds the parties have met the second factor: whether the named plaintiff and the potential opt-ins were subject to the same compensation and timekeeping policies. Plaintiff Shelton and Defendant Steam Logistics have stipulated that Plaintiff Shelton and "all the Sales Coordinators who comprise the proposed collective" were subject to the same compensation structure: a base salary plus commission. (Doc. 35 at 3, Stipulation 4.) They further stipulate that "Steam [Logistics] classified all members of the proposed collective as exempt under the FLSA based on the same exemption—the administrative exemption." (*Id.*) The parties' stipulations bind them. *Ken Lick Coal Co. v. Dir.. Office of Workers' Comp. Programs,* 129 F4th 370, 377 (6th Cir. 2025) ("When parties enter a stipulation, they must automatically accept 'the truth of the facts stated' in the stipulation") (citing *Christian Legal Soc'y. v. Martinez*, 561 U.S. 661, 667 (2010)).

9

Further, in each of the job postings discussed above, compensation is described as a "[c]ompetitive salary with uncapped commission paid out on a sliding scale—the more you sell, the more you make!" (Doc. 35-2, Ex. B at 2-9.) The Court concludes that the Plaintiff Shelton and the FLSA Collective were subject to the same policies as to compensation and timekeeping.

Finally, the Court examines whether Steam Logistics' defenses to this FLSA action are the same for Plaintiff and all members of the FLSA Collective. Plaintiff Shelton asserts only one claim in this action: that Steam Logistics failed to pay her and all other similarly situated employees overtime pay for work they performed in excess of forty hours a week in violation of the FLSA. (Doc. 1, Compl. ¶¶ 37–44); *see also* 29 U.S.C. § 207 (requiring overtime pay for more than 40 hours worked in a week). An employee is not covered by the FLSA and is therefore not entitled to overtime pay if the employee "works 'in a bona fide executive, administrative, or professional capacity,' as those terms are defined by [the Department of Labor's] regulations." *Helix Energy Sols. Grp, Inc. v. Hewitt*, 598 U.S. 39, 43 (2023) (citing 29 U.S.C. § 213(a)(1)). Steam Logistics has represented to the Court and to Plaintiff Shelton that its defense to Plaintiff Shelton's claim and the claims of the FLSA Collective is uniform: all Sales Coordinators were properly classified as exempt from overtime pay under the FLSA pursuant to the administrative exemption. (Doc. 35, Jt. Mem. at 6.) As stated by Steam Logistics, "*[t]he* defense raised for this alleged misclassification is the same defense for the entire proposed FLSA collective—the administrative exemption." *Id.* (emphasis added.) The administrative exemption is the only defense enumerated by Steam Logistics in the parties' Joint Memorandum. Consequently, the Court finds that the overtime claims of Plaintiff Shelton and each member of the FLSA Collective will be subject to the same, singular defense: the administrative exemption.

10

In sum, the parties have shown that Plaintiff Shelton and the FLSA Collective suffered from a single, FLSA-violating policy because Steam Logistics, allegedly, misclassified them as administrative employees exempt from the FLSA's over-time pay requirement. In other words, when considering the three factors discussed in *Clark* in light of the parties' stipulations and representations in their Joint Memorandum and the job postings submitted by both parties, the Court concludes that Plaintiff Shelton has shown a strong likelihood that the Sales Coordinators in the FLSA Collective are similarly situated to Plaintiff Shelton. Therefore, for purposes of court-facilitated notice of this lawsuit, the Court will **APPROVE** the FLSA Collective that is defined as:

> All persons who work or worked for Steam Logistics, LLC, as Sales Coordinators, or in other job titles performing similar duties who were/are classified as exempt from overtime at any time since May 1, 2022, through the present.

**B.    The Notice and Opt-in Form and the Plan for Distribution and Opting-In.**

*1.    The Notice and Opt-In Form.*

The Court now turns to the content of the proposed notice ("Notice") and the proposed opt-in form ("Opt-in Form"). A notice should be "timely, accurate, and informative." *Hoffmann-La Roche Inc.*, 493 U.S. at 171. It should explain in a neutral manner the nature of the case, the parties' respective positions, and the potential plaintiffs' rights. *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674, 2018 WL 2014548, at *6 (E.D. Tenn. Apr. 30, 2018) (citing *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011)). Further, "[t]he parties should 'be scrupulous to respect judicial neutrality' and 'take care to avoid even the appearance of judicial endorsement of the merits of the action.'" *Davis*, 2018 WL 2914548, at *6 (citing *Albright v. Gen. Die Casters, Inc.*, No. 5:10-CV-480, 2010 WL 6121689, at *4 (N.D. Ohio July 14, 2010)).

The Notice jointly submitted by the parties maintains a neutral tone. It accurately describes the nature of the lawsuit and that Steam Logistics denies the allegations in the lawsuit. It also explains clearly how one can opt-in, the window of time for doing so, and the effect of opting-in. Importantly, the Notice also informs the recipients that the Court has not decided which party should prevail in this lawsuit.

The Notice does not, however, inform the recipient that he has the right to join this action with counsel of his own choosing. "Informing Potential Plaintiffs of their right to select their own counsel is not only 'an appropriate element' of a notice, but failure to inform Potential Plaintiffs of that right risks seriously eroding it." *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 WL 5352509, at *5 (S.D. Ohio Aug. 21, 2023) (citing *Heaps*, 2011 WL 1325207, at *8–9 (collecting cases)).

Therefore, the parties shall be **DIRECTED** to add to the Notice in Section II entitled "YOUR RIGHT TO JOIN THIS CASE" a statement which informs the recipient of his right to join this lawsuit with counsel of his choosing.

The Opt-in Form provides that the signatory gives his consent to join the lawsuit for unpaid overtime brought under the FLSA against Steam Logistics; states how, where, and when to return the Opt-in Form; and informs the signatory that he may withdraw consent at any time.

The Court concludes both the Notice, *provided it is revised as directed*, and the Opt-in Form are appropriate. Therefore, the Court will **APPROVE** the Notice with the one required addition and will **APPROVE** the Opt-in Form.

    2.    *The Plan for Distribution and Opting-In.*

The parties have stipulated in their Joint Memorandum to their plan ("the Plan") for distributing the Notice and Opt-in Form and the method by which members of the FSLA Collective

12

Case 1:24-cv-00393-CLC-MJD   Document 36   Filed 06/02/25   Page 12 of 13
PageID #: 146

can opt-in. (Doc. 35 at 3–4, ¶ 6(a)–(g).) The Plan provides for Steam Logistics to supply Plaintiff's counsel the names, dates of employment, and mailing addresses and email addresses, if known, for members of the FLSA Collective within seven days of entry of the Court's order granting the Joint Motion. (*Id.* ¶ 6(b).) Thereafter, Plaintiff's counsel shall, within seven days of receiving the information from Steam Logistics, send the Notice and the Opt-in Form to the FLSA Collective by mail and email. (*Id.* ¶ 6(c).) Notice will also be posted on Plaintiff's counsel's website with a link to the Opt-in Form. (*Id.* ¶ 6(d).) Members of the FLSA Collective shall have sixty days in which to opt-in to the action by mail, email, or using the link on Plaintiff's counsel's website. (*Id.* ¶ 6(e).) The Court has reviewed these stipulations, finds them acceptable, and therefore will adopt them.

## IV. <u>CONCLUSION</u>

Accordingly, for the reasons stated in this Memorandum, the Court will **GRANT** the parties' joint Motion for Approval of Joint Stipulation for Court-Authorized Notice to Potential Plaintiffs (Doc. 34) as follows:

(1) The Court will **APPROVE** the proposed Notice—**provided** the parties add a statement informing the recipient of his right to join this lawsuit with counsel of his choosing.

(2) The Court will **APPROVE** the Opt-In Form.

(3) The Court will **AUTHORIZE** notice to the FLSA Collective, as defined by this Memorandum (*supra* at 10) pursuant to the Plan as stipulated by the parties. (Doc. 35 at 3–4, ¶ 6).

**An appropriate Order shall enter.**

/s/ _____
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**